Good morning, Your Honor. Good morning. David Zucman on behalf of Appellant Martinez. With respect to how time will be divvied out, Mr. Harley will be arguing for approximately five minutes and will be the two attorneys addressing the Court. All right. If it please the Court, Your Honors, after 15 years you would think I wouldn't get nervous coming up here, but every time I get nervous. And it seems like it's the simple cases that are the ones that make me the most nervous, because this case actually has a thorny, important issue inside of it. As Your Honors know, the only defense that was brought was reasonable doubt. The only claim was, look, the evidence by itself was not sufficient to prove beyond a reasonable doubt that these defendants knew. Now, I want to obviously address the issue of deliberate ignorance, willful blindness, however we want to describe it. And I think that it's obvious at this point that the government never really pursued a theory of deliberate ignorance or willful blindness. There was no attempt by the government to really argue that. I don't know why they submitted the instruction since there was no factual predicate in the record to show that these defendants did anything to deliberately avoid learning the truth, which is a necessary prerequisite to giving the instruction. We're all the way through briefing in this court, and there is still not a single act that's ever been pointed to by the government as, aha, this is the thing they did that was deliberately ignorant. This is how they willfully avoided blind or learning the truth of this. Every bit of the government's evidence was these guys knew. That's how they argued it. They said they knew. Counsel, would it be fair for the government to request that instruction in light of the defense's closing argument that there was a lack of actual knowledge? Well, I don't think the lack of actual knowledge actually gets them the instruction, because they always need that next step. Being kind of suspicious is never going to be enough to prove knowledge. Being reckless or careless is never going to be enough to prove knowledge. You might say, look, if you have a group of young men out on the beach at 4 a.m. and they've been drinking and they've been using marijuana, it's just suspicious inherently. But that doesn't prove that they were engaging in a criminal conspiracy to import marijuana. And that's the entire problem, is the Juul instruction often colloquially gets referred to as simply, well, if we don't prove that you knew, we can prove that you should have known. But proving should have known isn't enough. You actually have to prove that the defendant did something affirmatively to avoid learning the truth. That's why I spent all that time and got chided by the government for citing to the philosopher Daniel Dennett and saying that actually when you're talking about willful blindness, you're saying it's essentially the same as knowledge. What if the defendants just don't ask? If they're told, we want you to go to a beach in the middle of the night wearing black clothes, we want you to unload a boat, and none of the defendants ask, what is it that we're unloading? Is that sufficient? Well, that was actually discussed at length in the Heredia case, the en banc opinion from this court, where there was considerable discussion of what is the failure to investigate, and you actually have to have some sort of opportunity to investigate. There's got to be some point where, okay, we're overlooking that. Because what your Honor is just describing, the go to the beach in the middle of the night and wait for this boat, that to me sounds like you're saying knowledge. And if you listen to the cooperating witness, Mr. Gallegos, he said, look, I told these guys what this was all about. I said that this was a marijuana job, that we were all using marijuana together, that I met this guy who offered me the job at the liquor store while I was buying paraphernalia for marijuana. Now, I agree that none of those facts are very helpful for the defense in closing argument. However, I want you, Your Honors, if you would, to consider what would happen if this case didn't have the cooperator Gallegos. Let's say that the government, instead of Mr. Gallegos turning state's evidence, he had just decided to remain at the defense table. And then all you had was these guys on the beach with the boat offshore. And the offense or no offloading ever occurred. They just were there, and the boat was kind of close. I think that that would be a pretty close case when it came to sufficiency. But much like Mr. Ramos, Victor Ramos argues that being simply present on a beach with a boat offshore, that isn't enough to demonstrate a criminal conspiracy. And the reason that point is important is because when you add to the mix that Mr. Gallegos cooperated, I don't think his testimony in and of itself makes this case overwhelming, because that's what the government needs. I think, I mean, I believe that they don't have the necessary factual predicate to get the willful blindness instruction. I just don't think that there is any action that the government can point to that says this is the defendant's, this is what they did that shows that they didn't want to ask the last question, or they did something that showed that they were ignoring the fact that this was marijuana. Go ahead. Okay. So what case is it that you're relying upon to say that the defendant has to commit some act that manifests a knowledge or imputed knowledge? What case is that? It's actually all the way back to Jewell, that it's actually in there, that you have the defendant does some affirmative act that demonstrates they didn't want to know. In Jewell, they actually had the classic setup. Maybe this is why it became the classic setup of the guy who offers to pay you a sum of money, and you're just not going to look in the trunk. I decided I wasn't going to look in the trunk, or when I saw the space discrepancy, I wasn't going to look and see what was in the space discrepancy, because I knew that if I looked, then all of a sudden I would know. Well, how is that different from not asking what was on the boat that was to be unloaded? How is that any different? But that wasn't the testimony. The government's evidence wasn't that they didn't ask. The government's testimony for Mr. Gallegos was I told all these guys what was happening. They were running a straight knowledge case. So if they disbelieved, if the jury, if the jury disbelieved Mr. Gallegos, you're saying that they couldn't nevertheless say, even if they weren't told that this was marijuana, the fact that they didn't inquire about it shows that they didn't, they were deliberately, they kept themselves from knowing about it. Without Mr. Gallegos, what you have is the four men on the beach, the boat offshore, and the boat goes somewhat northerly to try to land, because they know that border patrol is there or whatever it is. It's a very iffy case. Well, you still have them all dressed in black, still have the middle of the night, you still have them going to the hotel room, you still have the truck and the drugs found, you still have the connection between the hotel room and the people. Yes. And several of them. Yes. Something is going on. It strikes me this analogy would be the fraud case. The classic fraud case is you make a misrepresentation, but it's also fraudulent to omit something that is expected, that should be said. Here it seems to me the circumstances here might suggest that it called for some inquiry. If there wasn't any inquiry, that would be the act or the lack of an act that you're saying is required. Well, it seems to me that the government's evidence, though, wasn't based on the idea of a lack of inquiry. Their evidence was, and the only way they argued this case was knowledge. I went back and reread the government's closing argument and rebuttal last night. They never talked about the willful blindness instruction. It just, they don't do that. They say they do it in their answering brief, but they don't. Their argument entirely focused on knowledge. Answering brief? The government's answering brief. It's consolidated answering brief. They said, look, this was a fine instruction for us to ask for in light of what the defendants had been arguing. But I went back and reread the closing arguments, and they didn't make that argument. It's just not true. Did you make the argument, though, that you were on the beach innocently, didn't have any idea what was going on? Well, it wasn't me. Your side. Yes. The defense's argument was, I mean, I think that the government accurately characterizes it as attacking the cooperator's veracity. That was the essential point. But you were on the beach. Your clients were on the beach. They were on the beach. With all the circumstances we've all discussed. Yes. I suspect there was some suggestion to the jury that you didn't know what was going on. You just were a bunch of guys out having a good time. The suggestion was, and if I can bring it back, that's why this was a reasonable doubt argument. It was, look, the evidence of knowledge, knowing that these were, that they were there to offload a marijuana load, was very iffy. That, you know, if they, the water troll would have waited, you know, a half hour or 20 minutes or whatever it was, it would have caught them in the act, well, there would be no issue. But that's what happens. That's what makes great cases. If everybody did everything perfectly, we wouldn't have to come here. It would. What was the evidence, was the evidence iffy that they were there to unload something? There was a multiple conspiracy argument that this could have been an alien smuggling. That was one of the arguments that was proffered, that because this was a Ponga boat and this particular beach had been the site of several alien smugglings, that how do we know that this was not an alien smuggling? That was one of the arguments that was presented. But from Mr. Martinez's perspective, his essential argument was, I was there partying and having fun. I didn't know that this was going to be a drug smuggling, that I was just going along with my friends. Counsel, will you point me to the language in Jewell that you're relying upon to say that there has to be an action on the part of the defendant  a specific act? A specific act. Yes. I presume that Your Honors want me to go with Heredia. I don't want you to go anywhere. I just want you to give me the language, because I ask you, what case supports your argument that there has to be a specific act? And you said it goes all the way back to Jewell. So I'm asking you for the language in Jewell. It's Heredia, the en banc opinion in footnote 4, which is located at page 918. A willfully blind defendant is one who took deliberate actions to avoid confirming suspicions of criminality. A reckless defendant is one who merely knew of a substantial and unjustifiable risk, that his conduct was unlawful. A negligent defendant is one who should have similar suspicions, but in fact did not. Right. A deliberate action would be not to ask the question. Yeah. If there was some evidence that any of these defendants had done that, but I don't think there was. And if I could give one more citation, Judge Kaczynski writing for the court, thus under Jewell, the prosecution must prove that defendant was aware of a high probability that he was in possession of contraband and that he deliberately avoided learning the truth. Right. So deliberately. That's to take it. Where's the specific act as opposed to omission or failure to act? I think that's the question. That's the interesting question, is an act and a failure to act are often used interchangeably. Like a failure to act is often construed as an act. So obviously there's no evidence in the record that the evidence that any defendant asks, is this a marijuana load? So you could say that that was a deliberate act, except that that's not what the government's evidence was. The government's evidence was these guys knew. I'm beginning to trespass onto my co-counsel's time. Okay. All right. Thank you, Counsel. Good morning, Your Honors. Rob Hawley for Mr. Ramos-Otondo. Of course I join in co-counsel's argument on the deliberate ignorance issue. I'm just going to be talking shortly about the harmless error analysis that affects me. The government argues that all the alien smuggling evidence was harmless because it was more likely than not that the evidence did not affect the guilty verdict. Not so. With the alien smuggling evidence, there was overwhelming evidence of guilt. I can see that. I agree with the prosecutor. However, without the alien smuggling evidence, it's not so overwhelming. The defense had a shot at a better verdict. And by a shot at a better verdict, I'm suggesting that perhaps the defense could have hung up one or two jurors. I'm not standing before you arguing that it would be acquittal, but a shot or a reasonable chance at a better verdict means hanging up one or two people. And the only person standing in the way of a shot at a better verdict was Mr. Lizaraka, who was a cooperator, who came into court with so much credibility baggage that the judge had to tell the jury that the jury was to view his testimony with caution. Well, that's standard. True. However, to counter Mr. Lizaraka's testimony, defense had a viable knowing spectator defense. He was present. He wasn't part of the conspiracy. He was not an heir to the better. He might have been associating with guilty persons, but he's not part of the conspiracy. He's not an heir to the better. This is a defense theory that was viable down below. He knew about the marijuana in the boat, perhaps, but he was not part of the conspiracy, not an heir to the better. Simply put, there was a reasonable probability of a better verdict without all this alien smuggling evidence coming in. And when I use the word reasonable probability, I'm talking about a reasonable chance, more than an abstract possibility. So under all the circumstances, I think the alien smuggling evidence certainly struck a live nerve in the defense case and cannot be considered harmless error, other than I'm referring to Smith. When you say all this alien smuggling, you're talking about 404B evidence, the conviction? Is that the only thing, or is there more? Well, no. There was two agents testified about the actual activity constituting the conviction, and then also there's a confession about alien smuggling. So we have three pieces of evidence. We have an agent testifying about his prior alien smuggling activities, and then another agent advised him in Spanish and extracted a confession, and then there was a conviction for the alien smuggling activity, which occurred on July 17, 2009, and the conviction went down, I believe, on November 16, 2009. All that came in. That's huge, that's substantial, and it certainly struck a live nerve in the defense case. So that's my argument. I hope it's not considered harmless. I think we had a better shot had it not come in, and perhaps our defense tactics would have been a little bit different. Counsel? Counsel? Yes, sir. If I could ask you a question. Before getting to harmless error, could you address whether it's error to admit that evidence? You know, why doesn't it show knowledge of smuggling modus operandi or use of a panga boat on a dark beach in the middle of the night? You know, why is it a mistake for the court to admit? Your Honor, I can see there is an argument for admission under 404B, no question about it, but I'm asking the court to consider 403 when you're balancing the probative value against the prejudicial impact of this evidence, and when you're talking about a recent alien smuggling event, pretty much the same area by the same client, I think when you weigh and balance the prejudicial impact that comes in against him and balance against the probative value of the 404B, I think that the 403 considerations certainly would argue in our favor that it should have been excluded, even though it could be somewhat relevant. Okay. I understand. Thank you very much. All right. We'll hear from the government. Good morning, and may it please the Court. Mark Yohalam on behalf of the United States. I want to start very briefly with two significant what I think are concessions made by the defendants in their two arguments. The first was with respect to the instruction on deliberate ignorance. The defense conceded that even on their view, without the testimony from Ramos, from Gallegos, it would still be a pretty close case on sufficiency. That is exactly why, even on their view, the instruction is appropriate. In a case where it's a close call as to whether there's sufficient evidence of deliberate ignorance, then the abuse of discretion standard requires that this Court affirm the district court's discretionary decision to give that instruction. Well, I'm not sure that's a concession on the instruction, because opposing counsel's argument is that the government never tried this case on a theory of deliberate ignorance. And that was what I wanted to turn to next. And then I'll turn back to the 404B point at the end. The government is not required to put on a case of deliberate ignorance to receive the instruction. The deliberate ignorance instruction is typically going to be a fallback argument for the government. In other words, what the government will argue is if you believe, in this case Gallegos, then there is clearly actual knowledge. If you disbelieve Gallegos or disbelieve part of what Gallegos said but believe another part of what he said, then you can convict on a theory of deliberate ignorance. Well, what about the opposing counsel's argument that that was not part of the government's closing argument? If that was the government's theory, it would appear that it should have been part of the closing argument. To begin with, I think the government did make this argument in part in closing, which is at pages 793 to 794 of the government's excerpts of record. Now, it's not argued specifically in terms of that instruction. If you look at how the trial prosecutor argued the closing, particularly the rebuttal, it wasn't something that was a very doctrinally heavy argument. It was essentially a common sense argument. But she was responding to the argument that maybe the defendants merely thought they were at the beach to pick up aliens and not to pick up drugs. And what she says is that she goes on to say, yes, there was testimony about alien smuggling, but you couldn't possibly think you were there to pick up aliens because you would need a bus for that. You don't put them in a Ford Explorer, and this is at page 794. This is a distraction from the case. So that argument is, you know, only makes sense in the context of a deliberate ignorance theory. If your theory is that they were expressly told you are there to pick up marijuana, then there would be no relevance to this bus versus SUV point. The bus versus SUV point is if there were some question in the defendant's mind as to what they were there to do, such that they thought, well, maybe we're there to pick up aliens and maybe we're there to pick up drugs, then any such lingering doubt would be resolved by the fact that they traveled in an SUV and not in a bus, because if they were there to get aliens, they would take a bus, not an SUV. So I do think the government relied in part on the theory in its rebuttal closing. But again, looking at Heredia, which is clearly the controlling authority here and which notably defendants don't address at all in their reply brief, what Heredia says is not that the government is required to make this a theory of the case in order to receive the instruction, but rather that the government is entitled to pursue request instructions on alternative theories, and provided that the requested instruction is supported by some evidence, the court has discretion to give the instruction. Right. So what was the evidence in this case that supported the instruction? Well, two things. So first there's the evidence of the defendants on the beach in the middle of the night, dressed all in black clothing, with no identification documents. Their wallets and their cell phones had been left back at the hotel. So that's sort of your prototypical evidence that any rational person would know that you were up to no good. And that's what you have a, know that there's a high probability that you're going to be smuggling something in off the beach. And under those circumstances, what all of the cases, including Heredia, including Yee, and including Jewell itself, make clear is that in that situation, you are not allowed to practice what Jewell calls, and this is at page 701, a studied ignorance of what's going on. In other words, as in Yee, you have an obligation to look closer. Now, defendants have argued that if there's no opportunity to engage in an investigation, then it's not deliberate ignorance. And that's actually correct, and that's supported by Heredia. But what Heredia says, and this is at page 920 of Heredia, is that a decision that's influenced by coercion, exigent circumstances, or lack of meaningful choice is perforce not deliberate. In other words, if they were just told, come on, get in this van, we're taking you somewhere, you're going to do something, and don't ask any questions about it, because we're not going to answer it, under those circumstances, not asking questions might be significant. But here, there was ample time to ask the questions. At a minimum, even if you were to take out all of Gallegos' testimony, the evidence was very clear that these three defendants had met at a hotel room before going to the beach, so there would be an opportunity there, that they had taken the SUV to the beach, they could have asked while in the SUV, and that they were then on the beach together, where they could have asked then. The further evidence that justified giving this instruction, though, and I think this is actually the most significant point, is that Gallegos' testimony might have been believed in part, but not in full. And this is a point that Heredia itself explains, this is at 923, note 14, that sometimes a jury will credit some of a witness's testimony, but not all of it. And that's typically where the deliberate ignorance instruction becomes most valuable. Here, what the defendants argued was two things, aside from their impugning the cooperators. One was that the defendants themselves were, quote, people who were willing to do something risky, but not ask a lot of questions. So that's sort of the quintessential person who's practicing a studied ignorance of the wrongdoing. And the second thing they argued is that, and this is at GER 702-03, is that drug cartels don't give a lot of information to unloaders, such that it is possible that Gallegos might have given them some information, for example, told them wear dark clothing, don't bring your wallet, don't bring your phone, but didn't go so far as to tell them that they would be unloading drugs. Now, if the jury credited that interpretation of Gallegos' testimony, in other words, that it was true in part, but not true in total, then you would have the quintessential deliberate ignorance situation, which is that you're invited to do something that is clearly smuggling, but rather than confirm that it's smuggling and then withdraw if you don't want to commit a crime, you don't ask questions so that when it comes time for trial, you can claim that there's some ignorance. So, you know, that's why, as Heredia makes clear, the instruction would be appropriate here. I also want to turn for a minute to the point of whether it has to be some act as opposed to a failure to act. I think both Judges Huck and Judge Rawlinson have pointed to the places in Heredia that make clear that, no, a failure to investigate is, in fact, the quintessential scenario. There may occasionally, although I've never seen one in reviewing this Court's jurisprudence, be a fact pattern where the drug boss starts to explain what's going to happen and the smuggler says, whoa, whoa, whoa, I don't want to hear anything more. Just put what you've got to put in my truck and pay me the money and that's it. That would be an act, but I've never seen that fact pattern. Rather, the fact pattern that you routinely see is simply that the person doesn't investigate. And here that is, in fact, what the defendants said they did in closing argument. They said that they knew what they were doing was risky, but that they were people who didn't ask questions. And that is not asking questions, the failure to investigate. Counsel, when I ask you who are in the closing argument, the prosecutor made the deliberate ignorance argument. You pointed me to pages 793 and 794 of the government record. Could you direct me to the argument there that you rely upon to support your position that the government referenced this issue in closing argument? Yes. So, again, it's not a doctrinal argument. But what the prosecutor is saying, the prosecutor is responding to defendants' arguments that they might not have known that they were there to unload drugs, because they might have thought they were there to unload aliens. The prosecutor responds to that argument by saying that they couldn't have believed that, because they were there to be picked up by a Ford Explorer, not by a bus. What page are you on? This is 793 to 794. Right. So she says... What lines? So on 793, lines 22 to 25, she says, these offload crews were not there to help with aliens, but to unload the marijuana. The black Ford Explorer was waiting nearby not to put 25 aliens in, but to load up 745. So how does that imply a deliberate ignorance? So the answer is that there was no question in this case what, in fact, was going to be unloaded from the boat. Everyone agreed that the boat was loaded up with marijuana. The argument that the defendants made is that they might have believed that they were instead there to unload aliens. And if they believed they were there to unload aliens, then they could not be convicted either of the substantive importation count or of the conspiracy to import, because they wouldn't have the requisite knowledge of the subject matter of the illegal importation. And the prosecutor responds to that not by saying, ladies and gentlemen, you heard from the cooperating witness Gallegos that they were told they were there to import marijuana. That would be an argument that relied exclusively on actual knowledge. Instead, what she says is that, no, they were there with a SUV, not with a bus. And no one could think that you were going to unload 25 aliens into an SUV. If you were going to unload aliens, you would have had a bus. And so that argument, and again, it's not a significant argument. It's not tethered to the instruction. But it is an argument that's responsive to the defendant's theory of deliberate ignorance. I would also say, though, that there's nothing in the case law that requires the government to advance the theory of deliberate ignorance in its closing arguments. Well, but in Juul it did say there was evidence in the record of deliberate ignorance. So there appears to be some type of linkage required. I agree entirely that there has to be evidence in the record that would support giving the instruction. I don't think the government necessarily has to present that theory in closing to be entitled to the instruction. And the reason, one reason why is that the mere giving of the instruction may be sufficient to prove the government's point. It may be sufficient to prevent the defendants from pushing harder on this theory, such that the government doesn't even need to advance the argument in rebuttal. And here the evidence of deliberate ignorance, again, is the sort of A, the defendants, the unloading defendants' behavior on the beach, and B, that portions of Gallegos' testimony could be believed while other portions of his testimony were rejected. And as I noted, that's exactly what the defendants argued. Now, had I been trying the case, I might have directed the jury to that deliberate ignorance instruction and explained how it foreclosed the defendants' theory that not asking questions is a defense to engaging in illegal importation. The prosecutor didn't do that. But I don't think that that creates, sort of goes back in time and makes it erroneous for the Court to have given the instruction. The Court gave the instruction before the closing arguments, naturally. And so that's the point in time where its discretion has to be considered. And, you know, in terms of the deference that this Court owes, Heredia is quite insistent on this point. It twice talks about, and this is at pages 921 and 924, how, quote, the district court's proximity to the trial and intimate knowledge of the record justify considerable deference to its judgment in these situations. And then on 924, it goes on to say, an abuse of discretion occurs only in rare cases. That micromanaging when the instruction should be given leads to poor results and bad precedent from this Court. And Heredia was basically an effort to clear the brush of a lot of that bad precedent. Again, I want to, you know, emphasize that I think Heredia controls. But I also want to note a couple of arguments that the defendants have not really relied upon at argument today, but that are prominent in the reply brief, and so I want to address them very quickly. One is that the defendants, while not addressing Heredia, say that Jewell criticized the instruction given in that case, because it failed to define a high probability. And that's at the reply brief at pages 11 to 13. But there's nothing of the sort in Jewell. What Jewell says is that the district court would have done better to define deliberate ignorance in terms of knowledge of a high probability that there would be narcotics involved. But it didn't say that the term high probability needed to be defined. And, in fact, this Court's precedent overwhelmingly shows that it shouldn't be, that it's an ordinary term and that trying to stick a numerical value on it would be counterproductive. Second, the defendants say that Jewell effectively equates willful blindness in knowledge. But that's not quite right. What Jewell says is that the two, and this is at page 700, are equally culpable, not that deliberate ignorance is synonymous with what Jewell calls positive knowledge. Basically, the point is that the two have slightly different factual scenarios that support them, but they're both equally wrongdoing or sufficiently wrong that the statute criminalizes both of them. The final point I just want to make with respect to the deliberate ignorance instruction is, it appears that a significant portion of the reply brief now is directed to the question of whether the necessary level of intent in the case of Jewell is sufficient or not. And the question is whether the intent required in a conspiracy is consistent with the Jewell instruction. That was not the argument presented, as I understood it, in the opening brief. But if it is, the Eaglin case forecloses that. Eaglin at page 1069 says that the Jewell instruction is not inconsistent with the intent required in a conspiracy, as long as the jury is instructed on that level of intent. And here, the jury was repeatedly instructed on it. It was told that the defendants had to intend to help accomplish the goal of the conspiracy, that there was a plan, that there was an intent to further the object or purpose of the conspiracy. And the jury was specifically told that mere knowledge of a conspiracy is not sufficient.  Now, I want to quickly pivot to the 404B point and note two things. One was that opposing counsel stated that with the alien smuggling evidence in, there was overwhelming evidence of guilt. I submit to the Court, when 404B evidence supplies overwhelming evidence of guilt, that is a sign that it should be admitted, not that it should be excluded. The standard is that there has to be merely some connection between the crime and the prior bad act. And when the defense itself is conceding that the prior bad act makes it overwhelmingly clear that the current offense was committed, then that's a reason to admit it. At the end, in response to Judge Gould's question, opposing counsel said that the issue here was 403, not 404B. That was not the issue how it was framed in the opening brief. But to the extent it is, the defendant hasn't articulated any theory of unfair prejudice. It's certainly true that it's prejudicial in the sense that it makes it easier to convict his client. But it's not unfairly prejudicial. There's no reason to think that the jury would have convicted defendant merely on the basis of him having smuggled aliens in the past. Here, the defendant was apprehended covered in sand and wet, hiding in a toilet very close to where the boat washed up on the shore. He was identified as having been on the boat by a cooperating co-conspirator, Wizaraga. And so the idea that the jury was going to say, well, we have no idea whether he was actually involved in smuggling the drugs, but we're going to hammer him for the alien smuggling offense, I submit is implausible. Unless there are questions about the other issues, I'll submit on that. Your position is still that the defendant waived that argument? It is, Your Honor, although I think that... But what happened there? The judge ruled that he would allow the 404B evidence in about the smuggling of the aliens. It was a definitive decision. And you had some, or the trial counsel had some discussion with defense counsel about how that was going to be presented. And that's all that was. The stipulation was only about the contents of the stipulation, not whether a stipulation setting forth that there was a prior conviction was agreeable. Right? Isn't that what happened? Well, there was a joint stipulation was read to the jury in which defendant, both through his counsel and individually, told the jury that he had been convicted of alien smuggling on such and such date. The defendant told that, or did the defendant agree that the wording of the stipulation was acceptable, as opposed to putting in all the evidence about the particular crime? Which happens in the courtrooms all the time. But I don't see how that would be an offering of the evidence by the defendant. So the stipulation is at 495 to 96. And, Your Honor, I'm not sure I exactly understand the distinction, but Your Honor is correct that the stipulation doesn't, for example, say, I stipulate that it does not violate Rule 404B for this evidence to be presented. The stipulation merely discusses the content of the, of what would be said to the jury. But that, I think, is not any different from what happens in, for example, the Alvaro case cited in, which is in Ike Grant's nonpublished case. But in that case, what happened is the defendant initially tried to keep out evidence of a prior conviction that the government argued it could be used to cross-examine him. Cross-examination, that's different. That's impeachment. That's a different situation. Counsel makes a decision, a tactical decision, say, I'm going to bring it up first. So, but this is different than when it's being offered as basically substantive evidence and the judge has already made a definitive ruling, it's coming in, and I say, okay, let's discuss how the wording stipulation. I think there's a big difference there. Well, I agree that there is a difference, but the facts of the Alvaro case, I think it's Alvaro and I apologize, I don't recall the name. Sandoval, I apologize, Sandoval. I'm sorry, your time's up, I'm sorry. I've got your point, I think. Thank you. Okay. Thank you, counsel. Rebuttal. Just addressing the waiver issues, as far as the stipulation down below in order to determine what facts were coming in after counsel lost on his efforts to preclude the 404B evidence, I think the record's pretty clear. He objected to all the testimony coming in of the prior smuggling event, and that was overruled, and then after that, it was just a matter of him stipulating to what facts that supported the conviction were going to come in and be heard before the jury. He wasn't stipulating away any prior objection to the omission of that particular evidence. And also, there appears to be an issue about whether or not the 403 evidence was properly raised. I would note for the record in our excerpts at page 20, the court ruled, page 25 of the excerpts I'm talking about of Ramos Atando's supplemental experts, the court, as a result of defense counsel's objection on 403 grounds, articulated the probative value versus the prejudicial effect, and then as far as raising that. Counsel, I thought the argument was being made that because it wasn't raised in the opening brief, that that's a waiver. Understood. At page 14 of the opening brief, and page 15 of the opening brief, 403 is specifically mentioned. The conclusion of the opening brief where it says, assuming arguendo, that there was some relevance to the 404B evidence, it should have been excluded because the probative value was outweighed by the prejudicial effect. Now, in the conclusion portion, I can see the magic words, pursuant to 403, were not actually articulated, but it was clear from the conclusion that counsel was arguing it should have been excluded, and assuming arguendo, there was some marginal relevancy to it. The conclusion on page 21 of the AOB, a reversal is required because the court abuses discretion by omitting evidence of appellant's 2009 alien smuggling conviction. Assuming enough relevancy to pass rule 404B muster, the marginal relevancy of such evidence was outweighed by the prejudicial effect of the hot-button immigration issues of illegal aliens and alien smugglers, and in the conclusion, I think the obvious reference that counsel is making in its conclusion was to 403, even though it does not appear in the conclusion. You made the argument that 403 would permit, even if you didn't cite 403 in the conclusion. Yes. 403 should have been used to exclude the evidence after there was some relevancy established pursuant to 404B. When the judge engaged in the weighing and balancing process that's necessary in order to omit evidence pursuant to 404, pursuant to 403, the balancing process should have been used to exclude this highly prejudicial, deleterious evidence against my client during the trial. Thank you. Thank you, counsel. Thank you to all counsel. The case just argued is submitted for decision by the court. That completes our calendar for today. We'll be at recess until 9.30 a.m. tomorrow morning.
judges: Huck, Gould, Rawlinson